## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILKINSON LANGHORNE** | : | |
| **LIMITED PARTNERSHIP,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 20-00095** |
| | : | |
| **RUBY TUESDAY, INC.,** | : | |
| *Defendant.* | : | |

## MEMORANDUM

## I.   INTRODUCTION

Plaintiff brings this civil action for breach of contract "seeking ejectment from real estate under Pennsylvania law." ECF No. 13 at 1.  Plaintiff claims "this Court has subject matter jurisdiction because the parties are of diverse citizenship and the amount in controversy exceeds $75,000." *Id*.  Plaintiff's second amended complaint "presents a claim for money damages for unpaid rent that arose after the commencement of this litigation." *Id*.

Currently before the Court is Defendant, Ruby Tuesday, Incorporated's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), *see* ECF No. 14, and Plaintiff, Wilkinson Langhorne Limited Partnership's Response in Opposition to the Motion, *see* ECF No. 15.

## II.   BACKGROUND

On December 20, 2002, Defendant entered into a Ground Lease (the "Lease") with Plaintiff for particular real estate located in Middletown Township, Bucks County, Pennsylvania. *See* ECF No. 13 at 2.  Defendant is a well-known operator of chain restaurants across the United States and entered into the Lease for the purpose of operating one of its restaurants. *See id*. at 3.

In addition to the payment of rent, the Lease requires Defendant to maintain certain levels of insurance coverage. *See id.*  The Lease states that "when Tenant is in default, Landlord may, at its option, dispossess Tenant of the Premises without terminating the Lease and without absolving Tenant of its ongoing obligation to pay rent." *Id.* at 11-12.

In its original complaint, Plaintiff alleged that Defendant breached the insurance provisions of the Lease and brought a single cause of action for ejectment. *See* ECF No. 1 at 12-13.  Defendant moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. *See* ECF No. 6.  The Court granted Defendant's motion without prejudice and granted Plaintiff leave to amend its complaint to include a count for breach of contract. *See* ECF No. 8. Accordingly, Plaintiff filed its amended complaint. *See* ECF No. 9.  Defendant responded with its second motion to dismiss. *See* ECF No. 10.  Meanwhile, Plaintiff filed an emergency motion for leave to file a second amended complaint, which the Court granted. *See* ECF Nos. 11, 12.

2

In its second amended complaint, Plaintiff brings a count for breach of contract and an alternative count for ejectment. *See* ECF No. 13 at 11, 13.  As it did in its original complaint, Plaintiff alleges that Defendant breached the Lease by failing to maintain certain levels of insurance coverage, specifically as to its commercial general liability limit, its excess liability limit, and deductible levels. *See id.* at 11.  Additionally, Plaintiff alleges that Defendant breached its duty to pay rent and seeks unpaid rent for April 2020 in the amount of $13,310 and "all other rents Tenant fails to pay up to the time of judgment… [which] are likely to include: [m]onthly installments of Fixed Annual Rent for at least May and June 2020 ($13,310 each)… and possibly monthly installments thereafter if Tenant fails to resume payment of rent," and "property tax owed to Middletown Township… [which] as of this filing… is not yet late, but… [which] Landlord reasonably anticipates that Tenant will fail to timely pay." *Id*. at 12.

Defendant does not deny that it breached the insurance provisions of the Lease or that it failed to pay rent for the month of April.  Instead, Defendant moves to dismiss the complaint because Plaintiff has "repeatedly failed to allege that the amount in controversy is sufficient to evoke this Court's jurisdiction." ECF No. 14 at 8.  In response, Plaintiff contends that jurisdiction is proper and this "Court [has] jurisdiction over a lease dispute between diverse parties where (1) the rent owed under the remaining term of the Lease exceeds $600,000, (2) the Premises that is

the subject of the Lease is worth over $1.5 million, and (3) the Landlord complains Tenant has exposed Landlord to risks of at least $450,000 through its breaches of the insurance provisions of the Lease." ECF No. 15 at 13.

## III.  DISCUSSION

### A.  Standard of Review

When a defendant submits a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, a court must determine whether the motion is a "facial" or "factual" attack.  A facial attack considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court. *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).  "[A] facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.,* construing the alleged facts in favor of the nonmoving party." *Id*.  As such, a facial attack "contests the sufficiency of the pleadings." *Id*. (quoting *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012)).

A factual attack "is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id*.  A factual attack requires a factual dispute that concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites. *See id.*

(alterations in original) (internal citations omitted) (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)).

Plaintiff posits that Defendant's attack "is facial, not factual" because it "does [not] present any other competing facts respecting the amount in controversy," but rather "argues that what [Plaintiff] alleges in the Second Amended Complaint is insufficient." ECF No. 15-2 at 5.  As such, Plaintiff argues that "the Court must 'consider the allegations of the [Second Amended] complaint as true.'" *Id*.  The Court agrees.

Here, because Defendant is not disputing the facts alleged in the complaint, the Defendant has made a facial attack and the Court accepts Plaintiff's allegations as true. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

B.  Diversity Jurisdiction

Pursuant to 28 U.S.C. § 1332(a), federal courts have jurisdiction over civil actions where the parties are of diverse citizenship and the matter in controversy exceeds the sum or value of $75,000.  The party invoking jurisdiction under § 1332 bears the burden of proving that the amount in controversy exceeds $75,000. *See AutoOwners Ins. Co. v. Stevens & Ricci Inc.,* 835 F.3d 388, 395 (3d Cir. 2016).

Here, Plaintiff alleges that jurisdiction is proper under § 1332 because "the parties are of diverse citizenship and the amount in controversy exceeds $75,000."

ECF No. 13 at 1.  Defendant does not dispute that the parties are diverse.[1]  Instead, Defendant contends that the amount in controversy requirement has not been satisfied.  Specifically, Defendant contends that "Plaintiff has now on three occasions failed to make any allegations concerning leasehold improvements and the re-rental value of the property, and for that reason its jurisdictional allegations are deficient with respect to the value of ejectment." ECF No. 14 at 10.

     1.  Amount in Controversy

The Third Circuit assesses the amount in controversy from the perspective of the plaintiff at the time the complaint was filed. *See Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388 (3d Cir. 2016); *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 539 (3d Cir. 1995).  Subsequent events may not increase the amount in controversy such that the court gains jurisdiction that it did not previously possess. *See Auto–Owners*, 835 F.3d at 395-96.

In actions for non-monetary relief, the amount in controversy is measured by the value of the object of the litigation from the perspective of the plaintiff at the time the complaint was filed. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977).  "The amount in controversy is not measured

---

[1] Plaintiff, Wilkinson Langhorne Limited Partnership, is a limited partnership formed under the laws of the State of Delaware, maintaining its principal place of business in Florida. ECF No 1. at 4. Richard W. Wilkinson and Linda J. Wilkinson, limited partners of Wilkinson Langhorne, are both citizens of Florida. *Id.* at 4. Defendant is a corporation formed under the laws of the State of Georgia with its principal place of business located in Tennessee. *Id.* at 5.

by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993).

In cases such as this, where relevant facts are not in dispute or findings have been made, the legal certainty test governs, and dismissal is appropriate only if the federal court is certain, from the face of pleadings, that the jurisdictional amount cannot be met. *See Frederico v. Home Depot*, 507 F.3d 188, 194 (3d Cir. 2007) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co*., 303 U.S. 283, 289 (1938)); *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997).

The Court granted Plaintiff leave to amend its original complaint twice. However, the Court is only obligated to consider the amendments that relate to events that occurred or existed at the time of Plaintiff's original filing on January 6, 2020.  For purposes of this analysis, Plaintiff's second amended complaint will not be considered as forwarding the court's temporal evaluation of the amount in controversy such that the filing of the original complaint is no longer at the focus of the Court's jurisdictional determination.  Plaintiff includes in its second amended complaint a single missed rental payment that did not occur until April, months after the original complaint was filed.  Because the alleged missed payment is an event subsequent to the filing of the original complaint, it will not be considered as contributing to the amount in controversy.  By the same logic, any

7

anticipation or speculation of future unpaid rents or future unpaid taxes cannot

properly be considered in the Court's amount in controversy calculation.

a. *Breach of Contract*

To establish a breach of contract claim under Pennsylvania law, a plaintiff

must allege: (1) the existence of a contract, including its essential terms, (2) a

breach of a duty imposed by the contract, and (3) resultant damages. *See 1352*

*Lofts Prop. Corp. v. Bobby Chez of PA, LLC*, 855 F. Supp. 2d 267, 375 (E.D. Pa.

2012) (citing *Axis Speciality Ins. Co. v. Brickman Grp. Ltd., LLC*, 458 F. App'x

220, 224 (3d Cir. 2012)).  The breach must be material in nature and the

commercial landlord must elect between "repossession and actual damages or

acceleration of the balance due." *Finkle v. Gulf & Western Mfg. Co.*, 744 F.2d

1015, 1021 (3d Cir. 1984).

Under Article 15(B) of the Lease, "when the Tenant fails to cure a default,

the Landlord may, at its option, dispossess the Tenant of the Premises without

terminating the Lease and without absolving the Tenant of its ongoing obligation

to pay rent." ECF No. 13 at 11-12.  Again, Plaintiff's first count for breach of

contract attempts to exercise the latter part of this option and attempts to bootstrap

unpaid rent for April 2020 in the amount of $13,310, and:

> All other rents Tenant fails to pay up to the time of judgment which are
> likely to include: [m]onthly installments of Fixed Annual Rent for at least
> May and June 2020 ($13,310 each), given Tenant's declaration that it will
> not pay rent for at least the next 90 days, and possibly monthly installments

thereafter if Tenant fails to resume payment of rent; [p]roperty tax owed to Middletown Township, for which Landlord forwarded the bill to Tenant on March 11, 2020. As of this filing, that tax is not yet late, but given Tenant's declaration that it will refuse to meet its financial obligations, Landlord reasonably anticipates that Tenant will fail to timely pay the tax bill. If such tax becomes delinquent, it will be owed in the amount of $6,787.87, plus any additional interest and penalties that accrue thereafter.

ECF No. 13 at 11-13.  Plaintiff admits that "the compensatory damages [it] seeks at the time of the filing of [its] Second Amended Complaint do not exceed $75,000 by themselves," yet Plaintiff still attempts to bolster the jurisdictional amount by adding rent and tax payments that were not yet delinquent, nor even due, at the time of filing. *Id*. at 9.

As previously stated, Defendant's failure to pay rent for the month of April did not occur until months after Plaintiff filed its original complaint and, therefore, cannot contribute to the amount in controversy.  Moreover, this Court cannot properly exercise jurisdiction based upon anticipatory and speculative sums.

Next, Plaintiff frames the amount in controversy as "the $450,000 difference between the Lease's required deductibles and those [Defendant] has chosen to maintain." ECF No. 15-2 at 12.  From Plaintiff's perspective, Defendant's failure to maintain the requisite amount of insurance coverage presents a "risk" because "[i]f there is a casualty on the Premises, it is [Plaintiff] who will bear the loss after [Defendant's] insurance fails to provide adequate coverage and [Defendant] files for bankruptcy." *Id*.  Plaintiff argues that it "should not have to wait and see if

[Defendant] is able to pay a deductible ten times larger than the one for which [Plaintiff] bargained in the event of a casualty." *Id.*

At this stage, in consideration of the deference given to Plaintiff, and the Court accepting all allegations as true and evaluating the value of the object of the litigation from Plaintiff's perspective, the Court must consider whether this insurance deficiency satisfies the amount in controversy threshold. Clearly, the number standing alone is greater than 75,000. From Plaintiff's perspective, Defendant's "breaches of the insurance provisions of the Lease" expose Plaintiff "to risks of at least $450,000." ECF No. 15-2 at 13. As such, the Court accepts the value Plaintiff has assigned to that object, which is measured by losses that will follow from Defendant's lack of coverage. The Court, therefore, considers the $450,000 in risk exposure as the value of the rights being litigated.

b. *Ejectment*

Quite often, a breach of a commercial lease agreement incites ejectment, yet this "does not automatically provide the landlord with the right to commence an ejectment action." *In re MDC Sys., Inc.*, 488 B.R. 74, 87 (Bankr. E.D. Pa. 2013). Ejectment is a possessory action which allows a plaintiff who is out of possession to succeed only if he has a right to immediate possession. *See ARC DBPPROP001, LLC v. Easton Buffet LLC*, 2019 WL 4645133, at *9 (E.D. Pa. Sept. 24, 2019) (citing *Wells Fargo Bank, N.A. v. Long*, 934 A.2d 76, 78-79 (Pa. Super. Ct. 2007))

(internal citation omitted); *see also Becker v. Wishard*, 202 A.3d 718, 721 (Pa. Super. Ct. 2019) (citing *Siskos v. Britz*, 790 A.2d 1000, 1006 (Pa. 2002)).  To prevail on an ejectment action, a plaintiff must demonstrate: (1) he is out of possession of the property, and (2) he has a present legal right to immediately possess the property when the action is commenced. *See Long*, 934 A.2d at 79.

In exercising the former part of the Article 15(B), Plaintiff seeks to dispossess Defendant under its second, alternative count for ejectment.  Under count two, Plaintiff alleges the value of the object of the litigation as "the value of the possessory interest sought by Landlord (i.e. to eject Tenant from the Premises)." *Id*.  Plaintiff describes the value of its possessory interest as:

> [The] four years of rent remaining under the Lease, for a total… of $638,880… the four years of tax payments remaining under the Lease… [in the amount of] $117,688… the market sale value of the Premises [in the amount] of $1,526,201.60… the market value of the building… [in the amount] $542,214.40… [and] the amounts of Tenant's deficiencies in its Commercial General Liability Insurance limit, its excess liability insurance limit, and its deductible levels, each well in excess of $75,000.

ECF No. 13 at 9-11.

The Third Circuit has not expressly ruled on how to measure the amount in controversy in ejectment actions.  Plaintiff suggests this Court adopt the Fourth Circuit's holding "that the amount in controversy in an ejectment action is based 'on the value of the whole of the real estate to which the claim extends.'" ECF No. 15-2 at 10 (quoting *Peterson v. Sucro*, 93 F.2d 878, 882 (4th Cir. 1938)) (cited as

controlling standard in *Deutsch Bank Nat'l Trust Co. v. Fegley*, 2017 WL 10403451, at *3 (E.D.Va. 2017)). According to Plaintiff, "[although] [t]he Third Circuit has not expressly opined on how to value 'the object of the litigation' in ejectment actions, [it] has made clear that when performing the valuation analysis for any non-damages case, the object of the litigation is determined by its value to the plaintiff, rather than the cost to the defendant of losing the object of the litigation." *Id.* (citing *Columbia Gas*, 62 F.3d at 542).

Here, it is not certain, from the face of pleadings, that Plaintiff cannot meet the jurisdictional amount. The Court declines Plaintiff's invitation to adopt the Fourth Circuit's "value of the real estate" standard in lieu of the Third Circuit's "object of the litigation" analysis. Also, the Court is not accepting Plaintiff's contention that the balance of rent and tax payments under the Lease, the market sale value of the building and overall Premises satisfy the amount in controversy in its count for ejectment. However, because the Court accepts the $450,000 insurance deficiency and its value to Plaintiff as the object of the litigation, Plaintiff's immediate right to possession is effectively contingent on Defendant's breach of the Lease, and, if successful, the remedy Plaintiff elects to pursue.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's second amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) is denied.

BY THE COURT:

/s/ Chad F. Kenney

**Date:** July 14, 2020

**CHAD F. KENNEY, J.**